**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **EUGENE KIGHT,** | |
| **Plaintiff,** | **Civil Action No. 10-cv-0836 (BJR)** |
| **v.** | **ORDER AND MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

Plaintiff Eugene Kight, a former United States Army E-1/Private, brings this action against the United States, asserting that the Army Board for Correction of Military Records (hereinafter "ABCMR" or "the Board") acted arbitrarily and capriciously when it did not upgrade Kight's discharge from "other than honorable" (hereinafter "OTH") to either an honorable discharge or a general discharge with a reentry code that would allow him to re-enter the military. *Amended Complaint* [dkt. #14] (hereinafter "*Amd. Cmplt.*") ¶¶ 2-5.[1]  The United States filed a Motion for Summary Judgment [dkt. #16] (hereinafter "*Def.'s Mot.*").  Kight cross-moved for summary judgment [dkt. #24] (hereinafter "*Pltf.'s Mot.*").  Upon consideration of the motions and the record of the case, the court concludes that the United States' Motion for Summary Judgment should be granted, and Kight's Cross-Motion for Summary Judgment should be denied.

## I.    LEGAL STANDARD

The parties have cross-moved for summary judgment under Federal Rule of Civil

---

[1] As defendant notes, the defendant named in the caption of Kight's Complaint, the United States, differs from the defendants named in the body of his Amended Complaint, the Hon. John McHugh, Secretary of the Army, and the Department of the Army. *Am. Cmplt.* ¶¶ 8-9.  Defendant recognizes that it is not inappropriate to name the United States as defendant in an action under the Administrative Procedure Act, but notes that, based on the terms of the statute providing for the correction of military records, 10 U.S.C. § 1552(a)(1), the proper party defendant in this case is the Secretary of the Army, the Hon. John McHugh, in his official capacity. *Def.'s Mot.* at 1 n.1.  The court will allow this case to proceed, but notes that the appropriate defendant would have been the Secretary of the Army. *See., e.g., Ashe v. McNamara*, 355 F.2d 277, 278 n.1 (1st Cir. 1965) (allowing a records change case to go forward against the Secretary of Defense, while noting that it would have been appropriate to have sued the Secretary of the Navy).

Procedure 56, which provides for entry of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Federal courts review final decisions of the ABCMR under the Administrative Procedure Act, 5 U.S.C. § 706. *Wilson v. McHugh*, — F. Supp. 2d —, Case No. 11-CV-303, 2012 U.S. Dist. LEXIS 16354, *10 (D.D.C. Feb. 9, 2012).  In reviewing a case under the APA, the role of a court is limited to reviewing the administrative record. *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007).  The role of the agency acting under the APA is to resolve factual issues and arrive at a decision that is supported by the administrative record. *Id.*  "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)).  In such cases, summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *Id.*

Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).  An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.*

The Secretary of the Army, who acts through the ABCMR, "may correct any military record of [his] department when [he] considers it necessary to correct an error or remove an

injustice." 10 U.S.C. § 1552(a)(1).  A court must apply an unusually deferential standard when reviewing an action of the ABCMR. *Escobedo v. Hon. Pete Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009).  "While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset to Secretary's determination." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).  The substantial deference afforded military board decisions "is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings," which would have the potential to "destabilize military command and take the judiciary far afield of its areas of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000).  A decision by the ABCMR is not arbitrary and capricious if it "minimally contains a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997).

A correction board's decision is "entitled to a presumption of regularity." *Escobedo*, 602 F. Supp. 2d at 248 (citations omitted).  The proceedings are governed by Army Regulation 15-185, codified at 32 C.F.R. § 581.3, which provides that "[t]he ABCMR begins its consideration of each case with the presumption of administrative regularity," and that "[t]he applicant has the burden of proving an error or injustice by a preponderance of the evidence." 32 C.F.R. § 581.3(e)(2).  The district court is not to function as a "super correction board" by reweighing the evidence. *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998).  The standard of review "does not require a reweighing of the evidence, 'but a determination of whether *the conclusion being reviewed* is supported by substantial evidence.'" *Walker v. Shannon*, 848 F. Supp. 250, 255 (D.D.C. 1994) (quoting *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis in original)).

## II.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Eugene Kight enlisted in the United States Army on March 13, 1995. Administrative

Record (hereinafter "AR") 153.  On July 21, 1995, he injured himself in basic training by falling

while running uphill backwards. AR 77-78; *Amended Complaint* [dkt #14] (hereinafter "*Amd.

Cmplt.*") ¶ 13-14.  Kight's injury aggravated a lower back injury that existed prior to service. AR

82-85; *Amd. Cmplt.* ¶ 14.  Over the next two months, Kight was evaluated for the injury by

medical personnel, none of whom considered the injury to be unfitting for military service. AR

77-85.  One examiner noted his belief that Kight was "using a pre-entry problem to get out of a

job which is not what he thought it would be." AR 85.

Over the course of August and September 1995, Kight received behavior counseling from

members of his unit on a number of occasions.[3]  On August 9, 1995, Kight was counseled

because he told his unit leadership that he would like to get out of the Army because he had

failed to adapt.  He also stated that he might take a course of action on his own to provoke the

commander into discharging him from the Army.  Kight was reminded that, were he to break a

rule or regulation, it could result in action being taken against him under the Uniform Code of

Military Justice ("UCMJ").  He was encouraged to fulfill his obligation to the Army.  On August

29, 1995, Kight was counseled because he left his guard post without being properly relieved.

On August 31, 1995, he was counseled on his duty performance, because he showed little to no

motivation and failed to make an effort to pull his weight in the squad.  On September 16, 1995,

---

[2] In cases in which judicial review is based solely on the administrative record, Local Rule 7(h) requires that
motions for summary judgment and oppositions thereto include a statement of facts with references to the
administrative record. LCvR 7(h)(2).  The United States submitted a Statement of Facts [dkt. #16-1], while Kight
referred the court "to the ABCMR Record of Proceedings, June 28, 2011, (AR 3-17) and Plaintiff's Amended
Complaint (ECF No. 14) for the factual and procedural background in this case." *Pltf.'s Mot*. at 2.  Kight cannot rely
on the factual claims in his Amended Complaint, as it does not contain references to the administrative record.
Thus, defendant's Statement of Facts will be considered undisputed, insofar as it is supported by the Administrative
Record.

[3] Such counseling is prerequisite under paragraphs 5-8 and 5-13, chapters 11 and 13, and chapter 14, section III, of
Army Regulation 635-200.  Such counseling may also be used to document failures of rehabilitation efforts in
administrative discharge proceedings. AR 86-89.

Kight refused to carry his rucksack from a platoon patrol base to a new location, complaining of back pain.  An officer ordered Kight to put on his rucksack despite his complaints, citing Kight's "history of malingering" in his statement on the incident.  On September 29, 1995, Kight was counseled for failing to be at the proper place of duty at the proper time after he missed formation. AR 86-92.

On October 16, 1995, Kight attempted to harm himself by taking two bottles of different pills.  Kight told the soldier who found him that he took the pills because of his severe back pain.  As they spoke, Kight also said that he had problems in his unit, and that he had tried to get their attention for help.  He stated that he did not want to be in the service, and he wanted to get out. AR 93.

On February 14, 1996, Kight was charged under the UCMJ for three unexcused absences, for willfully disobeying a lawful command from a superior commissioned officer, for malingering (specifically, feigning physical disability or intentionally injuring himself to avoid a training exercise when he consumed two bottles of pills), and for wrongfully straggling during a training exercise. AR 94-95; *Amd. Cmplt.* ¶¶ 22-25.  Kight's attorney, the Senior Defense Counsel for Fort Drum, advised Kight of the basis for his contemplated trial by court-martial and the maximum permissible punishment authorized under the UCMJ.  Kight was also advised of the alternative of accepting an OTH discharge, of the possible effects of a discharge characterization of OTH, and of the procedures and rights available to him. AR 98.

On March 4, 1996, Kight requested a discharge in lieu of trial by court-martial.  Kight stated that his request was voluntary and not subject to coercion; that he understood the elements of the offenses charged and was guilty of at least one of the charges; that he has been afforded the opportunity to consult with appointed counsel, who had advised him of the nature of his rights under the UCMJ; that, were he to be discharged with an OTH discharge, it could result in

substantial prejudice in civilian life; and that there was no automatic upgrading or review for an

OTH discharge. AR 96-98.  In his January 2009 application to the Board, Kight explained that

his counsel told him that he was likely to win his court-martial, and while a voluntary discharge

could have him out of the Army within 72 hours, it could be under OTH conditions.  Kight also

stated that his attorney told him that he could apply for an upgrade after a year.  Kight stated that

the discharge was not the option he wanted to take, but that he believed the next three years

would mean "HELL" from his chain-of-command. AR 39.

On March 14, 1996, Kight underwent a comprehensive medical examination.  The

examiner found no significant illnesses, defects, or conditions, and concluded that Kight was

qualified for separation. AR 103-111.  On March 25, 1996, Kight's company commander,

battalion commander, brigade commander, and trial counsel recommended to the Staff Judge

Advocate that Kight's request for discharge in lieu of court-partial be approved.  On the same

day, Kight's request was approved. AR 160-61.  On March 29, 1996, Kight was discharged

under OTH conditions, his rank was reduced to the lowest enlisted grade, he was given a reentry

code of "3" and a separation code of "KFS,"[4] and the court-martial charges were dismissed. AR

153, 160.

On November 13, 1996, Kight applied to the ABCMR requesting an upgrade in his

discharge characterization.  The request was denied on April 8, 1998. AR 133-37.  On July 24,

2006, Kight brought his request for an upgrade to the Army Discharge Review Board

(hereinafter "ADRB").  The ADRB denied his request on August 1, 2007. AR 128-30.  On

---

[4] A reentry code of 3 applies to a "[p]erson who is not considered fully qualified for reentry or continuous service at time of separation, but disqualification is waivable." AR 217.  Given a separation code of "KFS," which Kight received as a consequence of being separated in lieu of trial by court-martial under Chapter 10 of Army Regulation 635-200, a reentry code of "3" is "probable" under Army regulations. AR 153, 218.

January 12, 2009, Kight appealed to the ABCMR seeking review of the ADRB denial of his request for an upgrade in discharge characterization. AR 30.[5]

Kight's request to the ABCMR for re-characterization of his military records argued that the military failed to acknowledge and accommodate the injuries that Kight was suffering from when the alleged offenses were committed.  He also argued that the military failed to recognized the possible "undue command influence" in the decision to prosecute him.  He claimed that he had not been afforded a medical examination prior to his discharge.  Furthermore, he argued that, as a matter of equity, his discharge should be re-characterized as ten years had passed since he was out of the military, "more than several years past any possible punishment Applicant would have faced," but he still lived with the stigma attached to his OTH discharge.  Finally, Kight requested an upgrade as a matter of clemency in order to remove the stigma inherent in an OTH discharge. AR 32-33.

On June 28, 2011, the ABCMR denied Kight's request for relief, finding that he had been properly and equitably discharged in accordance with the regulations in effect at the time, that there was no evidence of procedural errors which would have jeopardized his rights, that all requirements of law and regulation were met and his rights fully protected throughout the separation process, and that his discharge properly reflected his overall record of service. AR 21.

On September 1, 2011, this case was reassigned from Judge Walton to Judge Rothstein. *Reassignment of Civil Case* [dkt. #12].  On September 12, 2011, Kight filed his Amended Complaint in response to the ABCMR's June 28, 2011 decision.

---

[5] The procedural history becomes convoluted.  Kight's January 2009 application was initially denied without consideration on June 18, 2009, because the ABCMR found it to be untimely. AR 112.  On October 26, 2009, Kight filed suit in the U.S. Court of Federal Claims. *Amd. Cmplt.* ¶ 37.  On April 30, 2010, the Court of Federal Claims transferred the case to the D.C. District Court for lack of jurisdiction. *Order Granting Request for Transfer* [dkt. #1]. On December 10, 2012, the United States filed a Consent Motion for a Voluntary Remand to the Agency [dkt. #3] (hereinafter "*Remand Mot.*").  Defendant explained that it was not clear from Kight's application for reconsideration that he was appealing the October 2008 ADRB decision, rather than the ABCMR's April 1998 decision. *Remand Mot.* at 2.  On December 14, 2008, Judge Walton granted the motion to remand to the ABCMR, while retaining jurisdiction over the case. *Remand Order* [dkt. #4].  Kight's January 2009 application was denied on remand.

## III.    ANALYSIS

Kight claims that the ABCMR acted arbitrarily and capriciously when it "failed to act as a remedial board of equity, and did not give Plaintiff's contentions proper weight in light of the surrounding facts."  He further claims that the ABCMR failed to consider his injuries and subsequent pain, the "secondary effects" of the injuries (including side effects from medication and the impact on his mental health), and that his chain-of-command failed accommodate him properly.  He also claims that the ABCMR "failed to articulate more than a naked conclusion" as to why his claim that his re-entry code should be upgraded "lacked merit."[6] *Amd. Cmplt.* ¶¶43-45.  Kight argues that the ABCMR should not have been able to rely on his lack of supporting evidence for his testimony, because that evidence would be in exclusive custody of the Army. *Pltf.'s Mot.* at 5.  Kight also argues that the ABCMR acted arbitrarily and capriciously by "ignoring or unreasonably construing all evidence and testimony" that supported his account of events. *Id.* at 6-7.  Finally, Kight argues that ABCMR failed to act as a board of equity to "correct an injustice," which was "in violation of its statutory mandate." *Id.* at 10.

### A.    Kight's resignation was voluntary

While Kight's challenges largely attack the charges leveled against him under the UCMJ, and aim to undermine the validity of those charges, the arguments ultimately turn on whether Kight's resignation was voluntary.  *See Wilson*, 2012 U.S. Dist. LEXIS 16354, at *12.  If Kight's resignation was voluntary, the fact that he resigned rather than contesting the charges in a court-martial precludes him from challenging the underlying charges. *Id.*, at *14.  A soldier who voluntarily resigns gives up his opportunity to dispute the strength of the charges against him in a

---

[6] The United States addressed this claim in its motion for summary judgment, explaining that, under Army Regulations, a reentry code of "3" is appropriate for someone discharged under separation code "KFS" (*see* footnote 3, *supra*). *Def.'s Mot.* at 18.  As ABCMR found nothing improper about Kight's discharge process, it followed that his reentry code was also proper.  Kight did not respond to the United States' argument in his opposition.  As such, he concedes his claim to relief on that point.  *See Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

court-martial, "[j]ust as a criminal defendant who voluntarily accepts a plea offer thereby waives his right to challenge the prosecution's evidence in court." *Id.*

In *Veitch v. England*, the D.C. Circuit held that a serviceman could not seek review of charges that were brought against him under the UCMJ when he had chosen to voluntarily resign rather than contest the charges in a court-martial. *Veitch v. England*, 471 F.3d 124, 129 (D.C. Cir. 2006). Under *Veitch*, the risk of a felony conviction and jail time that could have followed from proceeding to trial by court-martial does not meet the standard for unlawful government duress or coercion that would invalidate the resignation. The test for such duress is objective, and consists of three elements. Under a reasonable person standard, the party alleging duress must (1) involuntarily accept the terms of the government, (2) under circumstances permitting no other alternative, and (3) said circumstances were the results of the government's coercive acts. *Id.* at 128. The court held that Veitch could not claim that he was without alternative circumstances, because successfully contesting the court-martial would have provided him with full relief from the allegedly unlawful charge leveled at him. *Id*. at 129. By resigning in the face of his court-martial charges, Veitch had failed to exhaust his military court remedies, and could not "escape the consequences of that decision" by claiming that the court-martial charges themselves were evidence that his resignation was coerced. *Id.*

In his memorandum to the ABCMR, Kight alluded to "undue command influence," claiming that his chain-of-command, whom he "spoke against at a military court," was punishing him for his injuries. AR 32. He explained in a separate statement to the ABCMR that he believed he would win his court-martial, but chose discharge because he did not want three more years of "HELL" with his chain-of-command. AR 39. Kight's due process claim to the ABCMR

made no allusions to his chain-of-command, however.[7]  In his present motion for summary judgment, Kight claims that accepting a discharge in lieu of court-martial was "the only reasonable choice" he had given the "duress" he experienced in the military, and in the face of a court-martial with a maximum punishment of dishonorable discharge, forfeiture of all pay and allowances, and six years of confinement. *Pltf.'s Mot.* at 9.

To the extent that Kight did raise the argument before the ABCMR that he resigned under duress, the Board's determination that Kight was "properly and equitably discharged in accordance with the regulations in effect at the time," and that there were no "procedural errors which would have jeopardized his rights" is supported by substantial evidence and was not otherwise arbitrary and capricious. AR 21.  Kight's signed request for resignation purports to be voluntary, and makes clear that he consulted with counsel and understood the possible ramifications of his resignation, including an OTH discharge. AR 96-97.  Furthermore, duress "is not measured by Plaintiff's subjective evaluation of his circumstances." *Wilson*, 2012 U.S. Dist. LEXIS 16354, at * 19 (citations omitted).  As was the case in *Veitch*, Kight had the option of defending himself before the court-martial, and even claimed he expected to be successful, but chose to leave the Army rather than pursue the court-martial alternative.

### B.    The Board's decision was supported by substantial evidence

In light of the voluntariness of Kight's resignation, his arguments concerning the Board's consideration of certain evidence and testimony may only be considered in connection with his claim that the ABCMR failed in its statutory mandate by refraining from acting equitably. Indeed, Kight relies heavily on the claim that his discharge should be re-characterized as a matter of equity, and that the Board's failure to consider certain evidence was damaging to his claims for equity and clemency. *Pltf.'s Mot.* at 6.

---

[7] Kight's due process claim before the ABCMR alleged that he had not been afforded a medical examination prior to discharge; however, medical records showed that he did receive such an examination, and Kight has not raised the issue before this court. AR 20-21, 33.

While the standard of review applied when a district court reviews the decision of the ABCMR is particularly deferential, *see supra* at Section I, there are, of course, limits to that deference.  Army Regulations require that the ABCMR, "if persuaded that material error or injustice exists, and that sufficient evidence exists on the record, direct or recommend changes in military records to correct the error or injustice." 32 C.F.R. § 581.3(b)(4).  "When a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)).  However, the burden always rests with the plaintiff to show that there has been an error or injustice. *Poole v. Harvey*, 571 F. Supp. 2d 120, 125 (D.D.C. 2008).  Review of a military board's decision by the district court does not require a reweighing of the evidence, but consideration whether the conclusion being reviewed is supported by substantial evidence. *Walker*, 848 F. Supp. at 255.

Kight argues that the Board acted arbitrarily and capriciously by finding he lacked supportive evidence, and contends that the preponderance of that evidence would have been in the custody of the Army.  Kight argues that the Board acted "contrary to its mandate" when it did not assist him in obtaining relevant documentation. *Pltf.'s Mot.* at 6.  The ABCMR is not an investigative body, but it may hold a hearing or request additional evidence or opinions in its discretion. 32 C.F.R. § 581.3(c)(2)(iii).  The United States notes that, even had it wanted to obtain the evidence that Kight referenced, his references were vague, and it was not possible to determine what records would be relevant. *Defendant's Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment* [dkt. # 25] at 4 n.2.  Kight responds that he "clearly could have provided more specific details if given the opportunity." *Plaintiff's Reply* [dkt. #27] at 3.

In his statement to the Board, Kight made vague references to an investigation surrounding theft by another soldier, a court-martial hearing, and a Senate investigation, all of which he claims resulted in retaliation by his chain-of-command. AR 39.  It is by no means "clear" that he could have provided more specific details.  It is also unclear that the evidence he suggests the Army had in its possession would have gone any further to supporting his claim of retaliation by his chain-of-command.  On the other hand, the ABCMR had substantial evidence showing that Kight had expressed a desire to get out of the Army on more than one occasion, and multiple reports as to the infractions that resulted in his court-martial charges.  The ABCMR was well within its discretion when it did not request additional evidence.

Kight also argues that ABCMR ignored or unreasonably construed the evidence he presented, *i.e.*, his testimony.  He argues that the ABCMR minimized his account of his persistent lower back pain and his characterization of his mental state, and claims that the Board should have considered these factors in determining whether to act equitably.  The record demonstrates that Kight underwent multiple medical exams showing that, while he injured his tailbone in a training exercise, he did not experience any fractures, and his spine was otherwise normal. AR 77-85.

The ABCMR will direct or recommend changes in a military record if it is persuaded that material error or injustice exists, and that sufficient evidence supporting the existence of the error or injustice exists on the record. 32 C.F.R. § 581.3(b)(4)(ii).  There is no indication that the Board ignored or unreasonably construed the evidence before it.  While Kight claims his testimony was not considered, the record demonstrates that the ABCMR came to the reasonable conclusion that his testimony did not outweigh the substantial evidence on the record contradicting his testimony, including multiple statements by medical examiners and military personnel at the time of Kight's injury and infractions.

Finally, Kight claims that "the stigma of [his] discharge characterization has imposed punishment greatly excess [*sic*] of his 'crimes.'" *Pltf.'s Mot.* at 10.  This claim is without merit. The ABCMR's decision was supported by substantial evidence, and was not arbitrary and capricious.  The Board has no duty to relieve Kight of the burden he took on knowingly and voluntarily when he requested a discharge rather than face the court-martial charges.

In light of the foregoing, it is, hereby,

**ORDERED** that defendant's Motion for Summary Judgment is **GRANTED**.  It is further, hereby,

**ORDERED** that plaintiff's Cross-Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

March 23, 2012

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE